UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES and NATIVE ECOSYSTEMS COUNCIL,<br><br>       Plaintiffs,<br><br>v.<br><br>UNITED STATES FOREST SERVICE; RANDY MOORE, Chief of the Forest Service; CARL PETRICK, Forest Supervisor for the Idaho Panhandle National Forest; and JESSIE BERNER, Sandpoint Ranger,<br><br>       Defendants. | Case No. 2:23-cv-00290-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is a Partial Motion to Dismiss brought by Defendants United States Forest Service, Randy Moore, Carl Petrick, and Jessie Berner (collectively, "Defendants") (Dkt. 12). Having reviewed the record and the briefs, the Court finds that the facts and legal arguments are adequately presented, and that the decisional process would not be significantly aided by oral argument. Accordingly, the Court will rule on the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the GRANTS the Motion in part and DENIES the Motion in part.

## II. BACKGROUND

### A. Factual Background

"The National Environmental Policy Act (NEPA) is a procedural statute intended to

ensure Federal agencies consider the environmental impacts of their actions in [their] decision-making process." 40 C.F.R. § 1500.1(a). By design, NEPA makes public participation a vital component of agency action. *See* 40 C.F.R. § 1506.6(b) (requiring agencies to "[p]rovide public notice of NEPA-related hearings, public meetings, and other opportunities for public involvement"). A primary way NEPA accomplishes its goals is by requiring an agency to prepare an Environmental Impact Statement (an "EIS") before the agency can undertake a "major Federal action" that will "significantly affect[] the quality of the human environment." 42 U.S.C. § 4332(C). "To decide whether an EIS is needed, the agency can first prepare an Environmental Assessment [(an "EA")][1] to determine whether a proposed federal action will have a significant impact." *All. For the Wild Rockies v. Petrick*, 68 F.4th 475, 483 (9th Cir. 2023) (cleaned up). If the agency finds that the action will not have a significant impact, then an EIS is unnecessary. *Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 963 (9th Cir. 2002).

This case arises out of a challenge brought by Plaintiffs Alliance for the Wild Rockies ("Alliance") and Native Ecosystems Council ("NEC") (together, "Plaintiffs") to the proposed Buckskin Saddle Integrated Resource Project (the "Project"). The Project authorizes around 13,005 acres of commercial logging and approximately 6,469 acres of noncommercial logging and fuels reduction in order to "increase the resilience of the forests in the project area to insects, diseases, drought, and the undesirable effects from wildfires." Dkt. 13-1, at 6.

---

[1] An EA is a "concise public document" that "[b]riefly provide[s] evidence and analysis for determining whether to prepare an [EIS] or[, alternatively,] a finding of no significant impact." 40 C.F.R. § 1508.9(a)(1).

The Forest Service announced a public scoping comment period on August 5, 2019, giving citizens and interested parties an opportunity to comment on and raise concerns regarding the Project. During the comment period, Alliance submitted three comment letters raising concerns about the potential environmental impact of the Project. On January 8, 2020, the Forest Service issued a draft EA for the Project and invited the public to submit comments thereon. In response to the draft EA, Alliance submitted two more comment letters, again raising concerns about the Project. Then, on July 13, 2020, the Forest Service issued a final EA and a draft Decision Notice, along with a notice giving the public an opportunity to object. In response, Alliance submitted two objection letters—one joined by co-plaintiff NEC, and one filed by Alliance alone. Finally, on April 23, 2021, the Forest Service published a Decision Notice and Finding of No Significant Impact for the Project.

**B. Procedural Background**

On June 14, 2023, Plaintiffs filed a Complaint requesting declaratory and injunctive relief, alleging that the Project violates NEPA, the Healthy Forest Restoration Act (the "HFRA"), and the National Forest Management Act (the "NFMA"). *See* Dkt. 1. Plaintiffs' Complaint consists of eight individual claims, each taking issue with different elements of the Project. *Id.* at 13–20. On August 29, 2023, Defendants moved the Court to dismiss NEC as a plaintiff for waiving its claims and for failing to exhaust its administrative remedies. It also moved the Court to dismiss the first six claims in Plaintiffs' Complaint, alleging that Alliance also waived the claims or failed to exhaust its administrative remedies. *See* Dkt. 13, at 5.

### III. LEGAL STANDARDS

**A. Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff "fail[s] to state a claim upon which relief can be granted." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1175 (2021). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (cleaned up). "This is not an onerous burden." *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must also allege sufficient facts to "state a claim for relief that is plausible on its face." *Id*. at 570.

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Id*. at 678. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, "dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

In cases decided after *Iqbal* and *Twombly,* the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

With Defendants, the Court notes that the Ninth Circuit has yet to clearly decide whether a motion to dismiss based on administrative waiver is best brought under Rule 12(b)(6)—like a failure-to-exhaust motion—or instead, under Rule 12(b)(1). Nevertheless, given the similarities between the doctrines of waiver and exhaustion, the Court finds that Rule 12(b)(6) is a proper avenue for bringing a dismissal motion based on waiver. A Rule 12(b)(6) dismissal "may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up).

Generally, in ruling on a 12(b)(6) motion, a court may "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). However, "a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the [writing] and its authenticity is unquestioned." *Id.* The Court can also "take judicial notice of government documents for their existence and contents, but not for the truth of the matter asserted when the facts are in dispute." *Friends of the Clearwater v. Higgins*, 523 F. Supp. 3d 1213, 1223 (D. Idaho 2021).

### B. Doctrines of Exhaustion and Waiver

"[W]aiver and exhaustion are related but distinct doctrines . . . ." *Petrick*, 68 F.4th at

488. "As a general rule, courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *Id.* at 487 (cleaned up). A party's failure to raise a particular concern before an agency, "such as in comments during a public-comment process, usually *waives* a litigant's rights to [raise that same concern] in court." *Id.* at 487–88 (emphasis added). Where a party brings a NEPA challenge, that party must participate in the public comment process in such a way that it "alerts the agency to the party's position and contentions in order to allow the agency to give the issue meaningful consideration." *Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1132 (9th Cir. 2011) (cleaned up). If the party fails to do so, a reviewing court will consider the party's contentions waived unless the party can show that the agency had independent knowledge of the party's concerns.

Administrative waiver does not foreclose judicial review—it simply limits the arguments that a party can make before a federal court. *See, e.g.*, *Portland Gen. Elec. Co. v. Bonneville Power Admin.*, 501 F.3d 1009, 1023–24 (9th Cir. 2007). On the other hand, if a party does not exhaust available administrative remedies before bringing a federal claim, such failure forecloses judicial review all together. *Id.*; *see also* 5 U.S.C. § 704 (exhaustion requirement from the Administrative Procedure Act); 7 U.S.C. § 6912(e) (exhaustion requirement from statute governing the Forest Service).

Federal regulations prescribe a formal objection process to be used by parties concerned about the impact of a proposed Forest Service action. 36 C.F.R. § 218.8. This process requires a plaintiff to file a written objection to a proposed action that includes, among other things, "[a] statement that demonstrates the connection between prior specific

written comments on the particular proposed project," before he or she can seek judicial review. 36 C.F.R. § 218.8(d)(6); 218.14. The objection must also be similar enough to any subsequent federal complaint that "the district court can ascertain that the agency was on notice of, and had an opportunity to consider and decide, *the same claims* now raised in federal court." *Buckingham v. Sec'y of U.S. Dep't of Agr.*, 603 F.3d 1073, 1081 (9th Cir. 2010) (emphasis in original). "The rationale underlying the exhaustion requirement is to avoid premature claims and to ensure that the agency possessed of the most expertise in an area be given first shot at resolving a claimant's difficulties." *Rittenhouse*, 305 F.3d at 965.

"There is no bright-line test to determine whether a party has properly exhausted a claim to the Forest Service; the determination must be made on a case-by-case basis." *Buckingham*, 603 F.3d at 1080. "[C]laimants who bring administrative appeals may try to resolve their difficulties by alerting the [agency] to the problem in general terms, rather than using precise legal formulations," nevertheless, claimants must raise their problem "with sufficient clarity to allow the [agency] to understand and rule on the issue raised." *Id.* (cleaned up).

In summary, a party must participate in the public-comment process to avoid waiving its claims. A party must file an objection that references its prior comments with some specificity to exhaust its administrative remedies. Additionally, exhaustion requires that the objection alert the agency to the issues underlying any subsequent legal claims from the party.

## IV. ANALYSIS

The Court will begin by addressing Defendants' request that NEC be dismissed as

a plaintiff. It will then analyze the legal sufficiency of each contested claim in turn.

### A. Dismissal of NEC

Defendants request that the Court dismiss NEC as a plaintiff because NEC did not participate in either of two public-comment periods—thereby waiving its claims—and because NEC's joint objection with Alliance was procedurally improper—meaning it failed to exhaust administrative remedies. *See* Dkt. 13, at 12–13.

As discussed above, before a party can seek to enjoin an action by the Forest Service, it must first have raised its contentions during a public comment period. *See Petrick*, 68 F.4th at 489–90 (holding that where a plaintiff failed to raise an issue in its comment to the Forest Service, its claim regarding the issue was waived); *Barnes*, 655 F.3d at 1132 (stating that parties must "structure their participation so that it alerts the agency to the parties' position and contentions" (cleaned up)); *League of Wilderness Defs.-Blue Mountain Biodiversity Project v. Bosworth*, 383 F. Supp. 2d 1285 (D. Or. 2005) (finding that issues that were not raised in a public comment period were barred from subsequent litigation). Where a party makes no comment, it waives all of its contentions.

Plaintiffs offer no evidence to rebut the charge that NEC failed to engage in the public comment process. Instead, they contend that under *Bowsher v. Synar*, 478 U.S. 714, 721 (1986), the Court need not dismiss NEC, so long as Alliance has standing. Dkt. 17, at 14. In *Bowsher*, the Supreme Court declined to wade into the murky waters of congressional standing to sue where it was clear that at least one plaintiff was not a congressperson and had standing to seek declaratory relief from an unconstitutional statute. *Bowsher*, 478 U.S. at 719–21. Even if the facts from *Bowsher* were analogous to those

here—and they are not—at its strongest, the language from *Bowsher* is discretionary. There, the Supreme Court stated that it "*need not* consider the standing issue" of other plaintiffs so long as one plaintiff had standing. *Id.* (emphasis added). Thus, if *Bowsher* were applicable, the Court *could* allow NEC to continue as a plaintiff but would in no way be *required* to do so.

Here, NEC failed to engage in the public comment process, and, as will be discussed in greater detail below, neither NEC nor Alliance have shown that Defendants had independent knowledge of their concerns. Thus, NEC has waived all claims against Defendants, making dismissal of NEC appropriate. There is no benefit to allowing one organization to piggy-back on the claims of another—particularly where NEC had every opportunity afforded to Alliance to engage in the decision-making process. Having determined that NEC has waived its claims, the Court need not address Defendants' arguments that NEC failed to exhaust its administrative remedies. Accordingly, Defendants' Motion to Dismiss NEC is GRANTED and NEC is hereby DISMISSED.

**B. Claim One**

Next, Defendants contend that Alliance failed to exhaust administrative remedies for Claim One and that the claim should, therefore, be dismissed. As discussed above, a plaintiff has exhausted its administrative remedies if it files an objection that is connected to a prior, specific, written comment, and that, "taken as a whole, provided sufficient notice to the Forest Service to afford it the opportunity to rectify the violations that the plaintiff[] alleged." *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 899 (9th Cir. 2002). In Claim One, Alliance alleges that Defendants violated NEPA by failing to sufficiently

consider the impact of the Project on "the fisher, flammulated owl, pygmy nuthatch and other species that depend upon mature and/or old growth for habitat . . . ." Dkt. 1, at 14.[2] Defendants urge that the arguments in Claim One do not match arguments raised by Alliance in an objection. Dkt. 13, at 17.

Before determining whether Alliance properly objected to the Project, the Court must determine which objections may be appropriately attributed to Alliance. Alliance asserts that it submitted two objections—one dated August 25, 2020, and joined by NEC (the "August 25 Objection"), and another dated August 27, 2020, filed by Alliance alone (the "August 27 Objection"). Defendants counter that only the August 27 Objection may be attributed to Alliance. The August 25 Objection, they argue, was properly rejected because NEC, as co-author, had not submitted any prior comments. Dkt. 20, at 2.

The Court finds that Defendants properly rejected the August 25 Objection *as to NEC* because NEC did not submit any comments. However, Alliance *did* submit comments during the public comment period. Further, Alliance was listed as the "Lead Objector" on the August 25 Objection. Dkt. 13-7, at 1.[3] Additionally, when rejecting the objection, the Forest Service sent a rejection letter only to NEC, and not Alliance, suggesting that the Forest Service understood the objection to be well-taken, at least from Alliance. Dkt. 13-

---

[2] Alliance adds that Defendants "fail[ed] to adequately consider the impact of removing significant acreage of habitat for mature and large tree dependent species and failed to adequately analyze impacts of the Project on the wildlife that depend on that habitat." Dkt. 1, at 14. The Court sees no material difference between this assertion and the one quoted above. Both make clear that Alliance is concerned about the impact the Project will have on species that depend on old growth.

[3] Federal regulations define the "Lead Objector" as the party who "represent[s] all other objectors for the purposes of communication . . . regarding the objection." 36 C.F.R. § 218.2.

8. All these facts support a finding that the objection is attributable to Alliance, and that its contents must be considered in determining whether Alliance exhausted its administrative remedies.

Having made such a finding, the Court turns to whether either of the objections (1) contains a statement connecting it to prior, specific, written comments, as required by 36 C.F.R. § 218.8(d)(6) and (2) is similar enough to Claim One to have put Defendants on notice of the claim, as required under *Buckingham*, 603 F.3d at 1081.

In the August 25 Objection, Alliance states that it submitted extensive commentary on the Project discussing its concerns. Dkt. 13-7, at 2. However, as Defendants point out, Alliance does little more to connect the objection to any of its five prior comments. Dkt. 20, at 2–3. It does not reference any comment specifically, let alone specific pages within a comment. Based on the objection's single, meager, conclusory statement, the Court cannot find that Alliance has demonstrated the necessary connection between the August 25 Objection and *specific* prior comments to establish administrative exhaustion. Moreover, Alliance acknowledges that it used the August 25 Objection to expand its analysis of the Project's threat to old-growth bird habitats beyond what it included in its prior comments. Such content, by nature, *cannot* be connected to a prior comment.

There are portions of the August 25 Objection that, if identified correctly, potentially raise arguments similar enough to Claim One to put Defendants on-notice of the claim. Nevertheless, because the objection as it exists now does not comply with 36 C.F.R. § 218.8(d)(6), it is not a sufficient basis from which Alliance can claim it exhausted its administrative remedies.

The August 27 Objection, on the other hand, does not suffer from the same defects. Throughout that objection, Alliance includes quotes from prior comments, and cites to the pages from which the quotes are drawn. At least one of the quoted portions discusses in-depth the Project's impact on old-growth habitat. Dkt. 13-14, at 125–127. Accordingly, the objection complies with 36 C.F.R. § 218.8(d)(6)—at least in its old-growth-habitat discussion.

Additionally, the substance of the objection is similar enough to Claim One to have given Defendants an opportunity to "understand and rule on the issue raised," before the claim made its way to federal court. *Buckingham*, 603 F.3d at 1080. The objection contains a robust discussion of perceived shortcomings of the Project's treatment of old growth, and the negative impacts likely to be experienced by wildlife as a result. Dkt. 13-14, at 172–90. In this discussion, Alliance alleges that the Forest Service "has conducted no research or monitoring comparing pre- and post-logging old growth occupancy by or abundance of the wildlife species with strong biological association with habitat components found in old growth." *Id.* at 182. Alliance alleges further that the Forest Service "has not analyzed the wildlife viability implications of managing the [Idaho Panhandle National Forest] well outside the [historical range of variability] for old growth, based upon the best available scientific information." *Id.* at 178. Elsewhere, Alliance asks the Forest Service to forego pursuit of some of its old-growth timber goals for the sake of wildlife habitat needs. Dkt. 13-14, at 126. These statements, and others included in the objection but not cited here, all support the Court's finding that Defendants were given ample opportunity to understand and address Alliance's concerns about the Project's impact on old-growth habitat before

Alliance filed this claim.

Defendants counter that the specific species mentioned in Claim One (the fisher, flammulated owl, and pygmy nuthatch) show up only sporadically, if at all, in the August 27 Objection, rendering the objection and Claim One too dissimilar for the Court to find that exhaustion. *See, e.g.*, Dkt. 13, at 17. This argument, however, misses the forest for the trees. Claim One argues that Defendants failed to appropriately consider the impact of the project on "the fisher, flammulated owl, pygmy nuthatch *and other species* that rely on mature trees and/or old growth for habitat . . . ." Dkt. 1, at 14 (emphasis added). While three species are mentioned by name, the thrust of the claim is concern for all animals within the Project's boundaries that depend on old growth. The fact that the August 27 Objection refers generally to concerns about "wildlife" that depend on old growth instead of listing every species that falls into that category does not render the objection ineffective.

Because Alliance properly connected the August 27 Objection to a previous comment, and because the August 27 Objection contained discussion sufficient to put Defendants on notice of Claim One, Defendants' Motion to Dismiss Claim One is DENIED.

### C. Claim Two

In Claim Two, Alliance alleges that the Project violates the HFRA by defining Wildland Urban Interface ("WUI") in a manner inconsistent with the HFRA. Dkt. 1, at 15. Defendants counter that Alliance failed to raise this argument in its comments, thereby waiving this claim, and that Alliance failed to raise this argument in an objection, thereby failing to exhaust administrative remedies. Dkt. 13, at 14, 17–18; Dkt. 20, at 4–5, 8–9. The

Court agrees with Defendants.

Alliance's comments were not sufficient to put Defendants on notice of its HFRA claim. The comments contain two separate statements regarding the definition of WUI. The first asserts that "[t]he forest plan definition of WUI has allowed entities other than the general public to set WUI boundaries outside of NEPA and NFMA processes, and defines it so vaguely as to expand the delineation of the WUI greatly—again outside NFMA and NEPA processes." Dkt. 13-13, at 171; *see also* Dkt. 13-9, at 51 (making the same argument in nearly identical terms). The second asks Defendants to "remap the WUI according to ecological features based on fire ecology and not false arbitrary boundaries parroting that [sic] of Bonner County." Dkt. 13-10, at 15; *see also* Dkt. 13-12, at 19 (making the same request with identical terms).

In *Petrick*—another case wherein Alliance alleged an HFRA violation—the Ninth Circuit found that language identical to Alliance's first statement "did not provide sufficient notice to the government of Alliance's . . . concerns." 68 F. 4th at 489. The court elaborated that while the language reflected a "broad concern about the size of wildland urban interface . . . . it [was] not a claim that the Forest Service [had] violated HFRA," and it could *not* have put the Forest Service on notice of a looming HFRA lawsuit. *Id.* Moreover, the first statement takes issue with the *forest plan's* definition of WUI, not the *Project's*, while Claim Two raises concerns about the *Project* and not the *forest plan*. Surely, at least one prerequisite for providing notice of concerns with a project is tying those concerns to the project itself.

Alliance's second statement comes no closer to providing notice of its HFRA claim

than the first. The statement evidences some apprehension with the way the WUI has been mapped, but it does not assert that the HFRA's definition is the proper fix. The Court simply cannot find that, based on Alliance's request for remapping, the Forest Service should have anticipated an allegation that it had violated the HFRA. Again, Alliance is not required to incant precise legal terms, but its comments must afford the agency opportunity to "give the issue meaningful consideration." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 764 (2004); *see also Petrick*, 68 F.4th at 489 ("Challengers to government action cannot avoid waiver with cryptic and obscure objections or issues presented at a very high level of generality." (cleaned up)). Neither Alliance's first statement, nor its second did so here. Thus, Claim Two is waived.

Regarding exhaustion of administrative remedies, even if the Court were to set aside the procedural deficiencies of the August 25 Objection, neither of Alliance's two objections address the arguments underlying Claim Two with precision sufficient to show exhaustion. The August 25 Objection does not reference WUI at all. The August 27 Objection mentions it just once in 228 pages—stating only "[t]he definition of [WUI] does not conform to any rational criteria, in regards to the alleged need to reduce fire risk in the project area." Dkt. 13-14, at 14. This curt criticism does not mention the HFRA, nor does it suggest an alternative definition. The argument that this lone statement—buried in hundreds-of-pages-worth of other arguments to which Alliance devoted more time and energy—was sufficient to alert Defendants to Claim Two simply does not hold water. Thus, even if Alliance had not waived Claim Two, it failed to exhaust its administrative remedies. Defendants' Motion to Dismiss Claim Two, therefore, is GRANTED. Additionally, because the window during

which Alliance could have avoided waiver and exhausted its administrative remedies has now closed, Claim Two cannot be saved by amendment. Accordingly, Claim Two is DIMISSED with prejudice.

### D. Claims Three and Four

Alliance concedes that it did not raise the issues underlying Claims Three and Four during the administrative process, and it makes no argument opposing the claims' dismissal. Accordingly, the Court finds that Alliance waived the claims and failed to exhaust its administrative remedies. Defendants' Motions to Dismiss Claims Three and Four are GRANTED. The claims are DISMISSED with prejudice because, like Claim Two, they cannot be saved by amendment.

### E. Claim Five

The NFMA requires any project that takes place in the National Forest System to be consistent with a land-and-resource-management plan. 16 U.S.C. § 1604(i). In Claim Five, Alliance alleges that the Project violates the NFMA because it will "create a forest structure . . . that is inconsistent with and contrary to the desired conditions set forth in the [Idaho Panhandle National Forest] Forest Plan." Dkt. 1, at 17.

As they argued regarding Claim Two, Defendants again contend that Alliance waived this claim and failed to exhaust its administrative remedies because it did not raise the arguments underlying the claim in a comment or an objection. Dkt. 13, at 16, 19. Alliance's response is two-fold. First, it invokes *Barnes*, arguing that the issues underlying Claim Five are so obvious that it did not need to raise them during the comment or objection stages to preserve its right to challenge them in court. Alternatively, Alliance argues that,

even if the issues raised in Claim Five fall short of the "so-obvious" standard from *Barnes*, Alliance sufficiently raised the issues in its comments and objections as to preserve its ability to sue. The Court will address these arguments in turn.

In *Barnes*, the Ninth Circuit reiterated the long-standing principle that, in certain circumstances, the flaws of an EA or an EIS are "so obvious that there is no need for a commentator to point them out specifically in order to preserve its ability to challenge a proposed action." 655 F.3d at 1132 (quoting *Public Citizen*, 541 U.S. at 765); *see also 'Ilio'ulaokalani Coal. V. Rumsfeld*, 464 F.3d 1083, 1092 (9th Cir. 2006). The Ninth Circuit has found that this "so obvious" standard is met when the agency had "independent knowledge of the issues that concern petitioners." *See Barnes*, 655 F.3d at 1132. For example, in *Barnes*, plaintiffs challenged the construction of a new runway at a local airport. *Id.* at 1126. Plaintiffs worried that the runway would increase nearby air traffic and decrease their quality of life. *Id.* at 1133. The Ninth Circuit found that the agency planning construction of the runway had independent knowledge of the runway's potential to increase air traffic because statements in the record showed that the agency had contemplated just such an outcome before plaintiffs initiated their suit. *Id.* (The agency had stated, among other things, "it is possible that construction of the . . . runway would remove a constraint to growth in aircraft activity."). Therefore, it was not necessary for the plaintiffs to have raised the issue in a comment or objection.

Here, unlike *Barnes*, there is no evidence in the record that Defendants had knowledge of Alliance's concerns in Claim Five—that the Project would result in inconsistencies with the forest plan. Alliance points to various statements from the Forest

Service in the EA that assert that one of the primary purposes of the Project is to bring the forest in-line with the forest plan. *See* Dkt. 17, at 11. However, these statements fail to meet the "so obvious" standard. Alliance needs to show not that Defendants were aware of and actively attempting to comply with the forest plan's desired conditions, but that Defendants knew the Project would lead to inconsistencies with those desired conditions. No such evidence is in the record. Accordingly, the "so-obvious" standard is unmet, and Alliance must show it did not waive or fail to exhaust the arguments underlying Claim Five.

Defendants contend that Alliance did not clearly argue in any comment that the Project will result in inconsistencies between the forest and the forest plan. Dkt. 13, at 6–7. The Court agrees. In its Response, Alliance points to statements from the comments that raise questions about the Forest Service's approach to logging, but virtually all of those comments request further *analysis* and *disclosure* from Defendants. *See* Dkt. 17, at 11–14. Not one of them affirmatively asserts that the Project is moving the forest away from the forest plan's desired conditions—the argument underlying Claim Five. Thus, Defendants' Motion to Dismiss the claim is GRANTED. Claim Five is DISMISSED with prejudice because it cannot be saved by amendment.

### F. Claim Six

In Claim Six, Alliance alleges that Defendants' "failure to disclose and consider the Project area's biophysical setting, failure to disclose which treatment units occur in which habitat type, and failure to analyze and determine whether the Project will meet or trend toward desired conditions . . . of the Forest Plan," constitute a NEPA violation. Dkt. 1, at 18. Alliance argues again that this issue is so obvious that it did not need to be raised, but

that even if it did need to be raised, Alliance raised it in comments and objections. Dkt. 17, at 11. Defendants contest Claim Six with the same arguments they raised in relation to Claims Two and Five—that Alliance waived the claim and failed to exhaust administrative remedies. Dkt. 13, at 16–17, 19.

At the outset, Claim Six falls short of the "so obvious" standard for the same reason Claim Five did—Alliance has pointed to no evidence in the record that Defendants were concerned that their failure to make the disclosures raised in Claim Six constituted a NEPA violation. Thus, as was the case with Claim Five, Alliance must show it did not waive or fail to exhaust the arguments underlying Claim Six.

Alliance points to only one instance in which it asked the Forest Service to clarify an issue related to the Project's biophysical setting, but even in that instance, Alliance's inquiry was limited to clarification about what biophysical setting is used to classify old-growth units. Dkt. 17, at 13; *see also* Dkt. 13-13, at 77; Dkt. 13-14, at 125–26. It did not raise concerns about the biophysical setting(s) of the Project *as a whole*, as it does in Claim Six. Alliance points to the same statement to contend that it raised questions about treatment units by habitat type, but this argument fails for the same reason—the statement does not evidence a Project-wide concern.

There is, however, ample evidence in the record that Alliance was concerned about Defendants' failure to determine and disclose whether the Project would push the forest towards the desired conditions laid out in the forest plan. For example, in both a comment and the August 27 Objection, Alliance stated, "[t]o the degree the forest plan direction has legitimacy, the EA fails to state all the relevant Plan direction and demonstrate consistency

with it." Dkts. 13-13, at 8; 13-14, at 19. In another instance, Alliance asserted that Forest Service plans "must demonstrate consistency with all the applicable direction in the Forest Plan to comply with NEPA and NFMA." Dkts. 13-13, at 10; 13-14, at 21; *see also* Dkts. 13-9, at 47; 13-14, at 126 (asking how a specific forest-plan priority can be achieved if the Forest Service doesn't "provide details on how [it] is to be accomplished"). Defendants contend that Claim Six is supported by only vague, generalized statements in the record. Dkt. 13, at 16. But it is hard to imagine how Alliance might have provided clearer notice of the argument underlying the third portion of Claim Six.

Accordingly, the Court finds that Alliance did *not* sufficiently raise concerns about the project area's biophysical setting, nor about which treatment units occur in which habitat type. However, Alliance *did* raise the issue of Defendants' failure to analyze or disclose whether the Project trends towards the forest plan's desired conditions. In other words, Claim Six survives, but only under the theory that Defendants' failure to analyze and determine whether the Project trends towards the forest plan's desired conditions is a violation of NEPA. Defendants' Motion to Dismiss Claim Six is DENIED, and the claim may proceed as outlined in this paragraph.

## V. CONCLUSION

In summary, Plaintiff NEC is DISMISSED because it waived all claims against Defendants. Alliance's participation in the administrative process was both procedurally and substantively sufficient to alert Defendants to Claims One and Six. Accordingly, Defendants' Motions to Dismiss those claims are both DENIED. Contrarily, Alliance's participation was not sufficient to alert Defendants to Claims Two, Three, Four, or Five.

Defendants' Motions to Dismiss those claims are each GRANTED.

## VI. ORDER

The Court HEREBY ORDERS:

1.  Plaintiff NEC is DISMISSED.

2.  Defendants' Motion to Dismiss Claim One is DENIED.

3.  Defendants' Motion to Dismiss Claim Two is GRANTED. Claim Two is DISMISSED with prejudice.

4.  Defendants' Motion to Dismiss Claim Three is GRANTED. Claim Three is DISMISSED with prejudice.

5.  Defendants' Motion to Dismiss Claim Four is GRANTED. Claim Four is DISMISSED with prejudice.

6.  Defendants' Motion to Dismiss Claim Five is GRANTED. Claim Five is DISMISSED with prejudice.

7.  Defendants' Motion to Dismiss Claim Six is DENIED. The claim may proceed as outlined herein.

DATED: February 22, 2024

David C. Nye
Chief U.S. District Court Judge